UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                        :

LOUBOV MATALA-DE-MAZZA, INDIVIDUALLY     :       16-CV-1185 (ARR)(RLM)
AND ON BEHALF OF ALL OTHER PERSONS      :
SIMILARLY SITUATED WHO WERE EMPLOYED BY :
SPECIAL TOUCH HOME CARE SERVICES,         :       OPINION AND ORDER
                                          :

                  Plaintiffs,                  :

      -against-                             :

SPECIAL TOUCH HOME CARE SERVICES, INC., AND :
STEVEN OSTROVSKY,                           :

                 Defendants.              :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

       Plaintiffs, a putative class of home health aides, have filed a motion to remand their

proposed class action to state court. For the reasons set forth below, I find that defendants'

removal to federal court was proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C.

§ 1332(d), and this court retains jurisdiction over the case.

## BACKGROUND

       The plaintiffs in this putative class action are current and former employees of defendant

Special Touch Home Care Services, Inc. ("Special Touch"). See Compl., Ex. A to Pls.' Mot. to

Remand, Dkt. #18-3. ¶ 1. On January 8, 2016, plaintiffs filed their complaint in New York state

court seeking damages from Special Touch and its owner and executive director, Steven

Ostrovsky, for alleged violations of New York Labor Law and New York Public Health Law. Id.

¶¶ 50-87.

       Specifically, plaintiffs assert four causes of action under New York Labor Law. Plaintiffs

allege that from December 2009 through the filing of their complaint Special Touch 1) failed to

pay them minimum wage for all hours worked, 2) failed to pay them overtime pay for all hours worked over forty hours per week, 3) failed to pay them a "spread of hours" premium for days on which they worked over ten hours, and 4) failed to pay them all wages due. Id. ¶¶ 11, 50-80. These four labor law claims largely arise from defendant's practice of having plaintiffs work twenty-four hour shifts at clients' homes but compensating them for only twelve hours of work. Id. ¶¶ 23-24.

Plaintiffs' fifth cause of action, arising under New York Public Health Law, alleges that Special Touch failed to pay plaintiffs the prevailing wage rates required by its contracts with various government agencies. Id. ¶¶ 41-44, 81-87.

With respect to defendant Ostrovsky, plaintiffs allege that he was responsible for all of Special Touch's illegal employment practices set forth in the complaint, and is thus individually liable for damages to plaintiff resulting from all five causes of action. See id. ¶¶ 8, 50-87 (naming both defendants in all five causes of action).

On February 8, 2016, defendants removed this case to federal court, alleging federal court jurisdiction pursuant to CAFA. See Notice of Removal, Dkt. #1. On March 30, 2016, plaintiffs filed the instant motion to remand, asserting that defendants failed to show that all of CAFA's requirements had been met and that, even if they had done so, this case should be remanded to New York state court under CAFA's "home state" exception. See Mem. in Supp. of Pls.' Mot. to Remand ("Pl. Br."), Dkt. #18-2, at 2, 6.

While this motion was being briefed, defendants submitted a pre-motion letter indicating that they intended to move to dismiss the complaint or, in the alternative, compel arbitration. See Defs.' Letter Requesting Pre-Motion Conference, Dkt. #19. I acknowledged defendants' letter,

but found that I could not consider the proposed motion until after ruling on the current motion to remand. See Notice of Apr. 25, 2016.

## STANDARD OF REVIEW

When evaluating a motion to remand, the party asserting federal subject-matter jurisdiction under CAFA bears the burden of showing a "reasonable probability" that such jurisdiction is proper. Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006) (quoting Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000)). Jurisdictional facts must be evaluated based on the pleadings "viewed at the time when the defendant files the notice of removal." Id. at 56-57. Once subject-matter jurisdiction under CAFA has been established, the burden shifts to the party seeking remand to demonstrate that one of CAFA's enumerated exceptions applies. See Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp., 603 F.3d 23, 26 (2d Cir. 2010).

## DISCUSSION

CAFA confers on federal courts jurisdiction over any class action meeting the following three requirements: (1) the putative class has 100 or more members, (2) the aggregate amount in controversy is $5,000,000 or more, exclusive of interest and costs, and (3) minimal diversity exists, meaning that at least one plaintiff and one defendant are citizens of different states. See 28 U.S.C. §§ 1332(d)(2), (5)(b), (6); Cutrone v. Mortg. Elec. Registration Sys., Inc., 749 F.3d 137, 142 (2d Cir. 2014) (citing Blockbuster, 472 F.3d at 56). It is undisputed that the plaintiff class contains over one hundred members and that minimal diversity exists. See Compl. ¶ 12 ("The putative class . . . is believed to be in excess of 500 individuals); Pl. Br. at 6-7 (stating that at least two-thirds of the class are citizens of New York); Notice of Removal ¶ 6 (stating that

3

defendant Ostrovsky is a citizen of New Jersey). Thus, if the amount in controversy meets or exceeds $5,000,000, federal court jurisdiction is proper under CAFA.

    A. <u>Amount in Controversy</u>

    The Supreme Court has held that a defendant's notice of removal need only contain "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." <u>Dart Cherokee Basin Operating Co., LLC v. Owens</u>, 135 S. Ct. 547, 554 (2014). If a plaintiff contests the defendant's allegation, however, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." <u>Id.</u>; <u>see also</u> 28 U.S.C. § 1446(c)(2)(B) ("[R]emoval of the action is proper on the basis of an amount in controversy . . . if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).").

    Defendants have offered compelling evidence that the amount in controversy arising from plaintiffs' first cause of action alone exceeds $5,000,000. Plaintiffs' first cause of action alleges that defendants failed to pay plaintiffs the statutory minimum wage for many of the hours they worked. Compl. ¶ 55. The cause of action also incorporates plaintiffs' allegation that they frequently worked twenty-four hour overnight shifts, but were paid for only twelve hours of their work. <u>Id.</u> ¶¶ 23-24, 50.

    In order to calculate the amount in controversy, defendants multiplied the minimum alleged damages from each twenty-four shift by the number of twenty-four hour shifts plaintiffs worked. <u>See</u> Decl. of Steven Ostrovsky in Opp'n to Mot. to Remand ("Ostrovsky Decl."), Dkt. #21 ¶¶ 7-8. This method of computation, multiplying the damages per hour by the number of hours worked by the plaintiff class, is widely accepted in this circuit when calculating the amount in controversy for putative class actions. <u>See, e.g.</u>, <u>Fields v. Sony Corp. of Am.</u>, No. 13-

CV-6520, 2014 WL 3877431, at *2 (S.D.N.Y. Aug. 4, 2014) (multiplying approximate hours worked by the class by damages per hour); Henry v. Warner Music Grp. Corp., No. 13-CV-5031, 2014 WL 1224575, at *3 (S.D.N.Y. Mar. 24, 2014) (same); cf. Sorrentino v. ASN Roosevelt Ctr., LLC, 588 F. Supp. 2d 350, 354 (E.D.N.Y. 2008) (multiplying average monthly rent by number of months for which plaintiff class sought rent abatement).

Defendants support their calculations with reliable evidence. To show the number of shifts the plaintiff class worked, defendants have submitted billing records indicating that during the six years in question (2010-2015), Special Touch home health aides[1] worked 94,821 twenty-four hour shifts for one client alone. See Ostrovsky Decl. ¶ 7; Billing Records, Ex. A to Ostrovsky Decl., Dkt. #21-1. To calculate the damages per shift, defendants multiplied the lowest minimum wage in effect during the applicable time period by the number of hours per shift for which plaintiffs were not paid. Ostrovsky Decl. ¶ 6. It is undisputed that the lowest minimum wage in effect during the period in question was $7.25 per hour. Ostrovsky Decl. ¶ 5; Compl. ¶ 51. Further, while plaintiffs allege that they were only paid for twelve hours during each twenty-four hour shift, defendants contend that, at least for part of the time period in question, plaintiffs were in fact paid for thirteen hours. Ostrovsky Decl. ¶ 4. Thus, defendants adopted the conservative estimate of eleven hours per shift in unpaid wages. Ostrovsky Decl. ¶ 6. Relying on these assumptions, defendants estimated that plaintiffs are seeking damages of at least $79.75 per shift (the $7.25 minimum wage multiplied by 11 hours per shift for which they were not paid). Id. ¶¶ 4-6. Defendants then multiplied $79.75 per shift in damages by the 94,821

[1] As the complaint purports to be on behalf of the named plaintiff and "each and every person employed by Defendants to provide personal care, assistance, health-related tasks and other home care services to Defendants' clients within the State of New York during [the relevant time period]," Compl.¶ 11, it is appropriately assumed for the purposes of these calculations that all Special Touch home health aides who worked a twenty-four hour shift during the period in question are part of the plaintiff class.

twenty-four hour shifts performed for their largest client to reach an amount in controversy of $7,561,974—well over the $5 million required by CAFA. Id. ¶ 8.

 Defendants have demonstrated that, were plaintiffs to prevail, their damages would exceed five million dollars in unpaid wages for work done for a single client on the first cause of action alone. Accordingly, I find by a preponderance of the evidence that the amount in controversy exceeds five million dollars.

Plaintiffs seem to concede the accuracy of defendants' calculation, but raise a separate argument—that because defendants intend to invoke a mandatory arbitration clause that could reduce the size of the class, defendants must account for that reduced class size when determining the amount in controversy. See Pls.' Reply in Supp. of Mot. to Remand ("Pl. Reply"), Dkt. #23, at 2 ("This [defendants' calculation] would be sufficient if not for the fact that Defendants state that they intend to enforce arbitration provisions . . . .") (emphasis added). Plaintiffs maintain that defendants "cannot use the threat of compelling arbitration as both a sword and a shield—requesting permission to move to enforce the arbitration provisions to reduce the size of the putative class, yet at the same time pretend[ing] the arbitration provisions do not exist to satisfy CAFA jurisdiction." Pl. Reply at 2.

This argument fails for two reasons. First, as stated above, jurisdictional facts are evaluated as of the time the defendant files a notice of removal. Blockbuster, 472 F.3d at 57; Lo v. St. George's Univ., No. 14-CV-3577, 2014 WL 6673849, at *5 (E.D.N.Y. Nov. 24, 2014). At the time the notice of removal was filed, plaintiffs' proposed class included all home health aides employed by Special Touch. Compl. ¶ 11. Defendants' proposed future invocation of an arbitration provision that may make the putative class smaller is irrelevant to the determination of subject-matter jurisdiction under CAFA.

6

Second, even if defendants' intention to compel arbitration were relevant in calculating the amount in controversy, plaintiffs do not concede that the arbitration clause is applicable to this case. On the contrary, plaintiffs make clear that they will dispute the application of the mandatory arbitration clause, and contend that this issue should be adjudicated by New York State courts. See Pl. Reply at 8 (noting that New York courts have been less inclined than federal courts to compel arbitration.) In light of this acknowledged litigation tactic, it is evident that it is not defendants, but rather plaintiffs who are using the motion to compel arbitration as both a "sword and a shield." Plaintiffs argue that their case should be remanded to state court on the ground that implementation of the arbitration provision will reduce their class size. Yet, they simultaneously assert that, once in state court, they would oppose the application of the arbitration provision and hence would seek to maintain the greater class size consistent with federal jurisdiction. Given plaintiffs' clear intent to oppose the arbitration clause's application, they cannot rely on the clauses' validity in support of their argument for remand.

Because defendant has established that federal court jurisdiction is appropriate under CAFA, this court must maintain jurisdiction unless one of CAFA's enumerated exceptions applies.

B.  CAFA's "Home State" Exception

There are three enumerated exceptions to CAFA jurisdiction. These exceptions are intended to maintain the "delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." Brook v. UnitedHealth Grp. Inc., No. 06-CV-12954, 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007) (quoting Hart v. FedEx Ground Package Sys. Inc., 457

F.3d 675, 682 (7th Cir. 2006)). Plaintiffs argue that one of these exceptions, the "home state exception," requires remand in this case.

The home state exception provides that a federal court must decline to exercise jurisdiction when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). It is undisputed that this action was originally filed in New York, that two-thirds or more of the proposed class are New York citizens, and that Special Touch is both a New York citizen and a "primary defendant." See Notice of Removal ¶ 20. In order for the home state exception to apply, however, all primary defendants must be citizens of the state where the action was filed. See Sorrentino, 588 F. Supp. 2d at 358 ("[T]he exception itself applies to 'primary defendants,' indicating the potential for more than one primary defendant in any given action."); Brook, 2007 WL 2827808, at *6. ("The plain language of the home state controversy section demonstrates that Congress intended that the State citizen requirement pertain to all primary defendants."). Thus, the applicability of the home state exception turns on whether Ostrovsky, a New Jersey citizen, is also a "primary defendant."

CAFA does not define the term primary defendant, and the Second Circuit has not had occasion to interpret its meaning. Other courts that have analyzed the home state exception and other CAFA exceptions that use the term "primary defendant" have adopted various methodologies in assessing the applicability of that term. For example, courts applying a more expansive definition of "primary defendant" have utilized a five-factor test developed by the district courts in this circuit. Under this test, a primary defendant is one who "(1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of

8

the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action." Sorrentino, 588 F. Supp. 2d at 358 (quoting Brook, 2007 WL 2827808, at *5); see also Powell v. Tosh, No. 5:09-CV-000121, 2009 WL 3484064, at *10-11 (W.D. Ky. Oct. 22, 2009) (applying this five-factor test). Courts utilizing this test evaluate the five factors to determine whether there is a "reasonable basis upon which to differentiate [the primary defendant] from the remaining defendants." Sorrentino, 588 F. Supp. 2d at 359; Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC, No. 2:10-CV-00510, 2011 WL 941079, at *6 (D. Nev. Mar. 16, 2011) (applying this test). Other courts have similarly looked to whether there is a principled basis for distinction among the defendants, but have done so without explicitly adopting this five-factor test. See Moua v. Jani-King of Minn., Inc., 613 F. Supp. 2d 1103, 1108-09 (D. Minn. 2009); Cooper v. R.J. Reynolds Tobacco Co., 586 F. Supp. 2d 1312, 1318 (M.D. Fla. 2008) ("[T]his Court does not need to adopt any of the above tests because there is no rationale to differentiate [one defendant] as a primary defendant and [other defendants] as secondary defendants.").

Some courts have defined the term more narrowly, defining primary defendants as all those who are sued directly, and secondary defendants as those who are sued vicariously or from whom contribution or indemnification is sought. See Morrison v. YTB Int'l, Inc., No. 08-CV-565/08-CV-579, 2010 WL 1558712, at *11 (S.D. Ill. Apr. 19, 2010); Grimmelmann v. Pulte Home Corp., No. 08-CV-1878, 2009 WL 1211771, at *2 (D. Ariz. May 1, 2009). Yet other courts have adopted more holistic tests, considering some of the factors laid out in Sorrentino, but also focusing on whether it is the conduct of the defendant in question that is alleged to be responsible for the wrongdoing claimed in the suit. See Vodenichar v. Halcon Energy Props., Inc., 733 F.3d 497, 505-06 (3d Cir. 2013) (holding that courts should consider whether the

9

defendant in question is the "real target" of plaintiffs' accusations, whether plaintiffs "seek to

hold the defendant responsible for its own actions" and whether the defendant faces "potential

exposure to a significant portion of the class and would sustain a substantial loss as compared to

other defendants if found liable"); McClendon v. Challenge Fin. Inv'rs Corp., No. 08-CV-1189,

2009 WL 589245, at *13 (N.D. Ohio Mar. 9, 2009) (holding primary defendants to be "those

parties having a dominant relation to the subject matter of the controversy, in contrast to other

defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who

are only vicariously liable.").

Applying any of these tests to the instant suit, Ostrovsky qualifies as a "primary

defendant." Plaintiffs' complaint makes no distinction between the corporate and individual

defendants, alleging that both are directly liable for all damages under all five causes of actions.

See Compl., ¶¶ 50-87. Further, applying the other Sorrentino factors, the defendants have equal

liability exposure, both are sued directly, and both are named in all causes of actions. The only

factor militating in favor of finding that Special Touch is the only primary defendant is that, as a

corporation, Special Touch is potentially more capable of satisfying a potential judgment than is

Ostrovsky. This speculative assumption, however, even if true, does not create a reasonable basis

to differentiate Special Touch as the primary and Ostrovsky as a secondary defendant, as both

defendants are sued directly on all causes of actions and face identical exposure to liability. See

Brook, 2007 WL 2827808, at *6 ("Since plaintiffs themselves maintain that defendants are each

equally culpable and liable[,] . . . there is no rationale basis upon which to differentiate the

defendants' status as being primary or secondary.")

To the extent that courts have considered more holistic factors such as whether a

defendant is the "real target" of plaintiffs' accusations, or whether plaintiffs "seek to hold the

defendant responsible for its own actions," <u>Vodenichar</u>, 733 F.3d 505, these factors also support a finding that Ostrovsky is a primary defendant. As plaintiffs' complaint names both defendants on all claims, Ostrovsky is no less the "target" of the lawsuit than Special Touch. Moreover, plaintiffs allege that Ostrovsky created and implemented the employment policies responsible for their harm. Based on the allegations in the complaint, Ostrovsky had "a dominant relation to the subject matter of the controversy," <u>McClendon</u>, 2009 WL 589245, at *13, as his wrongful conduct is the basis for the underlying suit.

Finding both Special Touch and Ostrovsky to be primary defendants is also consistent with Congress's limited guidance as to the meaning of the term. Following CAFA's enactment, the Senate issued a report attempting to clarify how Congress intended the term primary defendant to be construed. The report stated that:

> [The] Committee intends that "primary defendants" be interpreted to reach those defendants who are the real "targets" of the lawsuit—<u>i.e.</u>, the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

S. Rep. No. 109-14, at 43 (2005), <u>as reprinted in</u> 2005 U.S.C.C.A.N. at 3, 41. As discussed above, Ostrovsky has "substantial exposure" to all portions of the proposed class, as he is alleged to be liable to every member of the class on all causes of action.

Plaintiffs advance four arguments in support of their contention that Ostrovsky is not a primary defendant. First, they contend that because Special Touch would be most able to satisfy a potential judgement, there is a rational basis to distinguish between the two defendants. As acknowledged above, it is true that Special Touch is likely the defendant most able to satisfy a potential judgment. This factor alone, however, is insufficient to distinguish the primacy of the

11

defendants where, as here, both defendants face significant liability exposure to the entire class and both are being sued directly for their own alleged wrongdoing. If having the deepest pockets were itself sufficient to distinguish one defendant from others, the inquiry would have little to do with a defendant's alleged conduct, and would instead turn on factual inquiries into the various defendants' finances. Both the tests adopted by courts and the guidance provided by Congress indicate that the "primary defendant" analysis cannot be limited to comparing the defendants' abilities to satisfy a judgment. See also Passa v. Derderian, 308 F. Supp. 2d 43, 61 (D.R.I. 2004) ("[T]he measure of a particular defendant's ability to pay a judgment should have no bearing on [the court's] evaluation of a Rule 12(b)(1) motion."); Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 516 (E.D. Pa. 2007) (agreeing that defining a primary defendant as the defendant with the deepest pocket would be "unworkable because [it] would require a degree of fact-finding beyond [that] which could be performed at the [relevant] procedural juncture.").

Second, plaintiffs argue that Ostrovsky is subject to less liability than is Special Touch. In support of this argument, plaintiffs cite cases concluding that, under New York Labor Law, an individual defendant, unlike a corporation, is not automatically liable for unpaid wages. See Pl. Br. at 8. In the circumstances of this case, however, the argument is unavailing as plaintiffs' complaint asserts that Ostrovsky is liable for all unpaid wages, an allegation assumed to be true for the purpose of the primary defendant analysis. See Vodenichar, 733 F.3d at 505; S. Rep. No. 109–14, at 43 (2005), as reprinted in 2005 U.S.C.C.A.N. at 3, 41 (stating that primary defendants are those who would face the greatest liability exposure "if liability is found."). Having asserted these claims against Ostrovsky, plaintiffs cannot avoid federal jurisdiction by contending that their chosen claims may not succeed.

12

Third, plaintiffs seek to strengthen their primary defendant argument by amending their complaint in two ways. Specifically, they wish to allege that Ostrovsky relinquished his responsibilities as President and CEO of Special Touch on December 31, 2014, and that, as a result, he faces one fewer year of liability than does Special Touch. See Pl. Reply at 5. They also seek to clarify by amendment that their fifth cause of action under New York Public Health Law is brought against Special Touch only, as the law alleged to be violated applies only to corporations. Id. In seeking leave to amend, plaintiffs acknowledge that their complaint "was not carefully drafted to distinguish between the two Defendants." Id.

It is well-established that a motion to remand must be based on the pleadings in effect at the time the petition for removal was filed. Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939). Although some courts have recently concluded that, in light of the differing state and federal pleading standards, "plaintiffs should be permitted to amend a complaint after removal to clarify issues pertaining to federal jurisdiction under CAFA," Benko v. Quality Loan Serv. Corp., 789 F.3d 1111, 1117 (9th Cir. 2015), the Second Circuit has not addressed this exception to the general rule. In any event, there is no need to reach the issue in this case because even if plaintiffs were to amend their complaint in the manner proposed, Ostrovsky would still be a primary defendant under any of the tests described above.

Turning first to the Sorrentino factors, notwithstanding the proposed amendments, Ostrovsky would still be sued directly for four causes of action and be subject to a significant portion of the claims. While Special Touch would face exposure to somewhat greater liability than Ostrovsky and would be the only defendant named on the fifth cause of action, Ostrovsky would face only marginally less liability as a result of plaintiffs' proposed amendments. Although his resignation as CEO of Special Touch on December 31, 2014 would eliminate his

exposure to a year of potential liability, plaintiffs' amended complaint would still hold him liable for five years of unpaid wages to all members of the class under their first four causes of action. Further, the fifth cause of action, from which Ostrovsky would be removed, creates less potential liability than the four to which he remains a party. The statute under which the fifth cause of action is brought, New York Public Health Law § 3614-c, was not enacted until April 1, 2011. See Id.; Concerned Home Care Providers, Inc. v. Cuomo, 783 F.3d 77, 81 (2d Cir. 2015) ("In 2011, the New York Legislature enacted [the law in question] as part of a Medicaid reform package."). Accordingly, plaintiffs can only hold Special Touch liable under this statute beginning in April 2011, reducing the time frame to which this cause of action applies by a year and three months. In short, even under plaintiffs' proposed amended complaint, Ostrovsky would face twenty years of unpaid wage liability under four causes of action. While Special Touch would face twenty-eight years and nine months of unpaid wage liability under five causes of action, both defendants would face such significant direct liability that this distinction is not a "reasonable basis upon which to differentiate" between the defendants. Sorrentino, 588 F. Supp. 2d at 359.

When the more holistic tests other courts have adopted are considered, this difference in potential liability becomes even less significant. Plaintiffs would still "seek to hold the defendant responsible for [his] own actions," Vodenichar, 733 F.3d at 505, and Ostrovsky would still have a "dominant relation to the subject matter of the controversy." McClendon, 2009 WL 589245, at *13. Further, for the courts that consider only whether a defendant is directly or vicariously liable, this reduction in Ostrsovsky's exposure would not alter the analysis at all.

The Senate Report also strongly supports the conclusion that Ostrovsky would remain a primary defendant under plaintiffs' proposed amended complaint. Plaintiffs' argument in favor

of amendment is premised on the assumption that because the amendments would make Special Touch more of a primary defendant than Ostrovsky, Ostrovsky would no longer be a primary defendant at all. The Senate Report makes clear, however, that all primary defendants in a given case do not need to be subject to equivalent liability. The report unambiguously states that a primary defendant is "any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes." S. Rep. No. 109-14, at 43 (2005), as reprinted in 2005 U.S.C.C.A.N. at 3, 41 (emphasis added). As discussed above, Ostrovsky would still face substantial exposure and would remain liable to all members of the class under the proposed amended complaint.

Plaintiffs rely heavily on Nolan v. Exxon Mobil Corp., No. 13-CV-439, 2013 WL 6194621 (M.D. La. Nov. 26, 2013), in support of their claim that, at least under their proposed amended complaint, Ostrovsky would not be a primary defendant. Nolan similarly dealt with a dispute as to whether only corporate defendants or both corporate and individual defendants should be designated as primary defendants. Applying the Sorrentino factors, the Nolan court found the corporate defendants to be the only primary defendants because they were exposed to greater liability, were most able to satisfy a potential judgment, and "[were] sued directly and the majority of the claims [were] asserted against them." Id. at *4.

First, to the extent that Nolan could be read to hold that only the defendants who can best satisfy a potential judgment are primary, I am unpersuaded by that conclusion for reasons set forth above. Second, this case is distinguishable from Nolan in a number of ways. While the allegations against the various defendants in Nolan are not enunciated in the opinion, the emphasis the court placed on the fact that the corporate defendants were sued directly in

15

distinguishing among the defendants implies that the individual defendants may well have been sued only vicariously. Similarly, the court's reliance on the fact that the majority of the claims were asserted against the corporate defendants implies that the majority of claims were not asserted against the individual defendants.

Further, the Nolan court found that "[W]hile the Individual Defendants are named in the Petition, very little factual allegations are asserted against them." Id. Here, by contrast, all factual allegations against the corporate defendant are alleged to be the product of the individual defendant's policies. Lastly, the Nolan court found that the individual defendants did not face as significant exposure partially because "it [was] uncertain and perhaps unlikely that the Petition asserts a viable claim against the Individual Defendants." Id. As explained above, however, I find that the merits of plaintiffs' claims should not be considered at this jurisdictional phase of the litigation.

Plaintiffs' final argument in favor of finding Special Touch to be the only primary defendant is policy-based. Plaintiffs point out that at least two-thirds of the plaintiffs are New York citizens, all members of the class worked in New York for a New York corporation, and plaintiffs' claims arise exclusively under New York law. Pl. Reply at 8. In light of this local focus, they argue that this is exactly the type of case the home state exception was designed to cover—"to keep purely local matters and issues of particular state concern in the state courts." Id. (quoting Brook, 2007 WL 2827808, at *3).

Although plaintiffs' policy arguments are compelling, they do not change the outcome here. Even assuming that Congress, in drafting the home state exception, intended to exempt a case such as this from CAFA jurisdiction, it did not do so. Ostrovsky, despite incorporating and operating his business in New York, is a citizen of New Jersey, and none of the statutory

16

exceptions apply to this case. Given the clear requirements of the statute, mere assumptions about congressional intent cannot be a basis for remand. See Brook, 2007 WL 2827808, at *6 ("Similarly unpersuasive is plaintiffs' argument that the Court should, for both policy and equitable reasons, create an additional CAFA exception which applies where the subject matter of the action relates to a local interest, even though it does not fall within the ambit of [the statutorily created CAFA exception].").

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for remand is denied. The court grants plaintiffs an additional seven business days from the docketing of this order to file a letter responding to defendants' letter requesting a pre-motion conference regarding their anticipated motion to dismiss or, in the alternative, to compel arbitration.


SO ORDERED.

/s/(ARR)
_____
Allyne R. Ross
United States District Judge

Dated: June 3, 2016
Brooklyn, New York

17