UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                     :
LOUBOV MATALA-DE MAZZA, INDIVIDUALLY            :       16-CV-1185 (ARR)(RLM)
AND ON BEHALF OF ALL OTHER PERSONS              :
SIMILARLY SITUATED WHO WERE EMPLOYED BY  :       NOT FOR ELECTRONIC
SPECIAL TOUCH HOME CARE SERVICES, INC., AND :       OR PRINT PUBLICATION
STEVEN OSTROVSKY,                               :
                                                :       OPINION & ORDER
                        Plaintiffs,             :
                                                :
        -against-                               :
                                                :
SPECIAL TOUCH HOME CARE SERVICES, INC., AND X
STEVEN OSTROVSKY,

                        Defendants.
------------------------------------------------------------------

ROSS, United States District Judge:

        On January 8, 2016, plaintiff Loubov Matala-de Mazza ("Matala-de Mazza"),

individually and as class representative, brought this action in New York State Supreme Court

against her employer, defendant Special Touch Home Care Services, Inc. and its owner and

executive director Steven Ostrovsky (collectively "Special Touch"), alleging several violations

of New York law.  See Compl., ECF No. 1-1.[1]  Defendants removed this action to federal court

on February 8, 2016.  Notice of Removal, ECF No. 1.  Plaintiffs moved to remand.  See Mem. in

Supp. of Pls.' Mot. to Remand, ECF No. 18-2.  This motion was denied on June 3, 2016.  June 3,

2016 Op. and Order, ECF No. 24.  On September 7, 2016, Special Touch moved to dismiss or

compel arbitration based on the arbitration provisions of a collective bargaining agreement

("CBA") executed between plaintiffs' union, 1199 SEIU United Healthcare Workers East

---

[1] Plaintiffs' allegations are summarized in more detail in my June 3, 2016 Opinion and
Order, ECF No. 24.

("1199") and Special Touch.  See Mem. of Law in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, to Compel Arbitration, ECF No. 31-1 ("Defs.' Mem.").  For the reasons set forth below, arbitration is compelled.

The Federal Arbitration Act ("FAA") requires federal courts to enforce valid arbitration agreements.  See 9 U.S.C. §§ 2-3; Katz v. Cellco P'ship, 794 F.3d 341, 344 (2d Cir. 2015) ("Under the [FAA], a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.") (quoting McMahan Sec. Co. v. Forum Capital Mkts., 35 F.3d 82, 85-86 (2d Cir. 1994)); Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987) (same).  Because the FAA is mandatory, a court petitioned to compel arbitration is limited to addressing four questions: 1) whether the parties agreed to arbitrate; 2) whether the claims at issue fall within the scope of the agreement; 3) if federal statutory claims are asserted, whether Congress intended such claims to be nonarbitrable; and 4) if not all claims are found to be arbitrable, whether to stay litigation pending the outcome of arbitration.  JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004); Genesco, 815 F.2d at 844 (citing Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 626 (1985)).

Defendants have shown a valid arbitration agreement and that the instant action falls within the scope of that agreement.  The named plaintiff and all class members are members of 1199, which, since 2005, has had a collective bargaining agreement governing the employment relationship between plaintiffs and Special Touch.  Decl. of Evan Ostrovsky, ECF No. 31-2 ("Ostrovsky Decl."), at ¶¶ 2-3.  This agreement has been modified and extended by several memoranda of agreement ("MOA") and letter agreements.  Id. ¶¶ 4-5, 7, 9-11.  On February 1, 2016, 1199 signed a memorandum of agreement that added a provision requiring plaintiffs to

submit certain claims to a specified mediation and arbitration process.  Ostrovsky Decl. Ex. E, ECF No. 31-7 ("2016 MOA").  The 2016 MOA was subsequently ratified by 1199's membership.  Ostrovsky Decl. ¶ 10; Supp. Decl. of Evan Ostrovsky, ECF No. 33-1 ("Ostrovsky Supp. Decl."), at ¶ 2; Ostrovsky Supp. Decl. Ex. A, ECF No. 33-2 (letter from 1199 stating that "the 1199 members of Special Touch Home Care Service, Inc. ratified the contract").[2]  Thus, there is a valid agreement to arbitrate between the parties.

The 2016 MOA contains the following arbitration clause:

> [A]ll claims brought by either the Union or Employees, asserting violations of or arising under the Fair Labor Standards Act ("FLSA"), New York Home Care Worker Wage Parity Law, or New York Labor Law (collectively, the "Covered Statutes"), in any manner, shall be subject exclusively, to the grievance and arbitration procedures described in this Article.

2016 MOA at 4.  This agreement plainly covers the plaintiffs' claims, which arise under the New York Labor Law and the New York Home Care Worker Wage Parity Law.  See, e.g., Compl. ¶¶ 74-77, 87; see also Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc., No. 15-cv-9605 (KBF), 2016 U.S. Dist. LEXIS 73039, at *1 (S.D.N.Y. Feb. 3, 2016) (compelling arbitration of a dispute between another 1199 member and her employer based on the same arbitration clause).

---

[2] "[E]vidence proffered by [defendants], unless impeached or effectively countered, is sufficient to establish" any facts required to show entitlement to arbitration.  Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 357 (2d Cir. 1995).  "Although [plaintiffs have] repeatedly uttered general denials of [defendants'] contentions, [they] offered no evidence casting doubt on the accuracy of [defendants'] evidence or on the inference from this evidence that" the 2016 MOA was ratified by 1199's membership.  Id.  I therefore rely on the declarations and letter provided by defendants to establish the factual predicate necessary to show a valid agreement to arbitrate.  See also McAllister v. East, 611 Fed. App'x 17, 20 (2d Cir. 2015); General Media, Inc. v. Shooker, No. 97 Civ. 510 (DAB), 1998 WL 401530, at *6 (S.D.N.Y. Jul. 16, 1998) (citing, e.g., Manning v. Energy Conversion Devices, Inc., 833 F.2d 1096, 1103 (2d Cir. 1987)) ("To put the 'making' of a contract sufficiently in question to avoid arbitration, the party opposing arbitration has the burden of showing that there is a triable issue.").

The arbitration agreement limits the agreement's applicability to "the period covered by the CBA." 2016 MOA at 5. The parties dispute whether 1199 and Special Touch intended this period to extend back to the effective date of the original CBA signed between 1199 and Special Touch, or to apply only from the effective date of the 2016 MOA forward. Pls.' Mem. at 4-5; Defs.' Reply Mem. of Law in Further Supp. of their Mot. to Dismiss or, in the Alternative, Compel Arbitration, ECF No. 33, at 8-11. If plaintiffs are correct that the temporal limitation clause in the 2016 MOA limits its applicability to future disputes, most of their claims will not fall within the scope of the arbitration clause. See Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss or Compel Arbitration, ECF No. 32 ("Pls.' Mem."), at 4-5.

However, it is not necessary to resolve the temporal scope of the arbitration agreement at this time. The strong federal policy in favor of arbitration requires courts to "compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) (quoting David L. Threlkeld & Co. v. Metullgesellschaft Ltd., 923 F.2d 245, 250 (2d Cir. 1991). See also Arrigo v. Blue Fish Commodities, Inc., 408 F. App'x 480, 481 (2d Cir. 2011) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" including where "the problem at hand is the construction of the contract language itself.").

Here, the 2016 MOA defines "CBA" as follows:

WHEREAS, SPECIAL TOUCH HOME CARE SERVICES, INC. (the "Employer") and 1199SEIU United Healthcare Workers East (the "Union") are party to a collective bargaining agreement, dated November 1, 2005, as amended by Memoranda of Agreement ("MOA") including those effective January 1, 2011, December 9, 2011, and July 1, 2014 (collectively, the "CBA")[.]

2016 MOA at 1.  The arbitration agreement is therefore "susceptible of an interpretation that covers the asserted dispute." Collins, 58 F.3d at 19 (quoting Threlked, 923 F.2d at 250). Arbitration is therefore compelled with respect to all claims.  The parties may argue the proper construction of the temporal limitation clause before the arbitrator.  See Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 63-64 (2d Cir. 1983) (quoting McAllister Bros., Inc. v. A &S Transp. Co., 621 F.2d 519, 522 (2d Cir. 1980)) ("If the arbitration clause is broad . . . arbitration should be compelled and the arbitrator should decide any claim that the arbitration agreement, because of . . . temporal limitations, does not cover the underlying dispute.").

Finally, plaintiffs argue that the named plaintiff, Matala-de Mazza, cannot afford her share of the fees and expenses of the arbitrator "and therefore would have no legal remedy," rendering the arbitration agreement unenforceable.  Pls.' Mem. at 6; see also 2016 MOA at 5 (providing that "fees and expenses of the Mediator/Arbitrator shall be shared equally between the employee and employer.").  Defendants counter that the fee-sharing provision was amended by a June 23, 2016 side letter agreement providing that "[t]he fees and expenses of the Mediator/Arbitrator shall be borne solely by the Employer in any mediation and/or arbitration commenced by the Employee."  Ostrovsky Decl. Ex. G, ECF No. 31-9 ("June 2016 SLA"), at 2; see also Defs.' Reply at 13.

 "[A] party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000).  Matala-de Mazza argues that "[t]he average cost of arbitrating an employment claim is $20,000" and she "only earns approximately $220 per week."  Pls.' Mem. at 7.  These assertions do not meet her burden.  Matala-de Mazza did not "show[] . . . individualized prohibitive expense," as required to

5

meet her burden under Green Tree, nor did she provide any information regarding "the cost differential between arbitration and litigation in court." Valle v. ATM National, LLC, No. 14-cv-7993, 2015 WL 413449, at *6 (S.D.N.Y. Jan. 30, 2015) (quoting Brady v. Williams Capital Group, L.P., 878 N.Y.S.2d 693, 698 (N.Y. App. Div. 2009), aff'd 928 N.E.2d 383 (2010)).  Nor has Matala-de Mazza shown a "likelihood of incurring such costs," given the provision of the June 2016 SLA providing that defendants will bear the full cost of arbitration.[3] See Damato v. Time Warner Cable, Inc., No. 13-cv-994, 2013 WL 3968765, at *11 (E.D.N.Y. Jul. 31, 2013) (rejecting unconscionability challenge where "plaintiffs ha[d] not provided any evidence about their financial situations" and "ha[d] not conclusively established that they will be subject to the fees" plaintiffs challenged.[4]

Plaintiffs do not argue that the statutes under which they bring their claims are categorically exempted from mandatory arbitration.  See also Lai Chan, 2016 U.S. Dist. LEXIS 73039, at *6-7 n.3.

The Second Circuit requires district courts to stay proceedings after all claims have been

---

[3]     At this stage, such a showing may not be possible. It is unclear whether an arbitrator would decide that the fee-sharing provision even applies, given the June 2016 SLA. Interpretation of the various amendments to the CBA is a matter for the arbitrator to decide. Baldeo v. Darden Restaurants, Inc., No. 04-cv-2185, 2005 WL 44703, at *7 (E.D.N.Y. Jan. 11, 2005) ("[District court] review is limited to the gateway issue of whether there is a valid arbitration agreement."); Ciago v. Ameriquest Mortgage Co., 295 F.Supp.2d 324, 330 (S.D.N.Y. 2003) ("This is not to say, however, that all of the provisions to which plaintiff objects are valid. It is unclear at this point how the arbitrator will interpret the [disputed] provisions. Once this Court determines that the parties have agreed to arbitrate, the validity and meaning of specific provisions within the Agreement to arbitrate is a matter entirely for the arbitrator to decide.").

[4]     If plaintiff does arbitrate this dispute and is charged with costs, she may seek federal court review of the costs at that time.  See Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1261 (11th Cir. 2003) ("Should [plaintiff] not prevail, he may incur liability for costs and fees.  If he believes that liability is excessive or that it deprives him of his statutory remedy, he may seek judicial review.").

referred to arbitration and a stay requested.  <u>Katz</u>, 794 F.3d at 345.  Plaintiffs have requested a stay.  Pls.' Mem. at 8. Therefore, this action will be stayed pending arbitration.

## CONCLUSION

For the preceding reasons, the motion to compel arbitration is granted.  These proceedings are stayed pending arbitration.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:         October 31, 2016
               Brooklyn, New York